## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHARLENE R.,[1]                                  Case No. 1:22-cv-473
    Plaintiff,                               Litkovitz, M.J.

    vs.

COMMISSIONER OF                          **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Charlene R. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response (Doc. 11), and plaintiff's reply (Doc. 12).

## I. Procedural Background

Plaintiff protectively filed her application for SSI on August 9, 2019, alleging disability since March 2, 2018, due to depression; post-traumatic stress disorder (PTSD); anxiety disorder; bipolar disorder; personality disorder; paranoia; schizophrenia; and shoulder, knee, and back problems. (Tr. 25, 222). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Cristen Meadows. Plaintiff and a vocational expert (VE) appeared by telephone and testified at the ALJ hearing on January 21, 2021. (Tr. 42-73). On February 16, 2021, the ALJ

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

issued a decision denying plaintiff's SSI application. (Tr. 22-37). This decision became the final

decision of the Commissioner when the Appeals Council denied review on June 14, 2022.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or

mental impairment that can be expected to result in death or that has lasted or can be expected to

last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The

impairment must render the claimant unable to engage in the work previously performed or in

any other substantial gainful employment that exists in the national economy. 42 U.S.C. §

1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B.  The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] has not engaged in substantial gainful activity since August 9, 2019, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: osteoarthritis (OA), mallet deformity of the left middle finger, posttraumatic stress disorder (PTSD), depressive disorder, personality disorder, substance use disorders (20 CFR 416.920(c)).
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, [the ALJ] find[s] that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations: she can frequently climb ramps and stairs.  She can never climb ladders, ropes, or scaffolds.  She can frequently balance, stoop, kneel, crouch, and crawl.  She can frequently push or pull with the non-dominant left upper extremity.  She can frequently handle,

finger, or reach with the non-dominant left upper extremity. She can have no exposure to hazards of unprotected heights or dangerous moving machinery. She can perform simple, routine tasks and make simple work-related decisions. She is limited to low stress jobs, defined as jobs with only occasional decision making required and only occasional changes in the work setting or duties, where changes are explained in advance in a setting that does not require strict production quotas or a sustained fast pace. She can tolerate occasional interaction with coworkers or supervisors. She cannot perform joint tasks. She can have no over-the-shoulder supervision. She can have no interaction with the general public.

5. [Plaintiff] has no past relevant work (20 CFR 416.965).

6. [Plaintiff] was born [in] … 1966 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. [Plaintiff] has a limited education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because [plaintiff] has no past relevant work (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[2]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since August 9, 2019, the date the application was filed (20 CFR 416.920(g)).

(Tr. 27-36).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[2] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cleaner, housekeeping (423,000 jobs in the national economy) or merchandise marker (219,000 jobs in the national economy). (Tr. 36, 68-69).

4

substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

**D.  Specific Errors**

On appeal, plaintiff argues that the ALJ failed to properly evaluate the opinions of Jessica Twehues, Psy.D. (Tr. 483-88); Sheressa Albrinck,[3] MA, LPCC (Tr. 288-90); and the state agency psychological consultants (Tr. 90-91, 102-04).  As such, plaintiff argues that the ALJ's

---

[3] The ALJ refers to her as "Sheressa Albzinek, MA, LPCC" (*see, e.g.*, Tr. 31), but Ms. Albrinck's assessment reflects her name as presented in this Order (*see* Tr. 290, 301).

residual functional capacity (RFC) determination does not accurately reflect her mental

limitations.  Before turning to these opinions, the Court first sets forth the regulatory framework.

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical

opinions.  *See* 20 C.F.R. § 416.920c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819

(Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar.

27, 2017)).  These new regulations eliminate the "treating physician rule" and deference to

treating source opinions, including the "good reasons" requirement for the weight afforded to

such opinions.[4]  *Id*.  The Commissioner will "not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s),[5] including those from your medical sources."  20 C.F.R. § 416.920c(a).  Rather, the

Commissioner will consider "how persuasive" the medical opinion is.  20 C.F.R. § 416.920c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors:

(1) supportability, (2) consistency, (3) relationship with the claimant, including length of

treatment relationship, frequency of examinations, purpose of the treatment relationship, and

examining relationship, (4) specialization, and (5) other factors that tend to support or contradict

a medical opinion.  20 C.F.R. § 416.920c(c)(1)-(5).  The most important factors the ALJ must

---

[4] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion."  *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.  For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[6] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 416.920c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 416.920c(d).

      1.  <u>Jessica Twehues, Psy.D.</u>

Plaintiff was examined by Dr. Twehues for disability purposes on January 7, 2020. (Tr. 483-88). Plaintiff alleged disability "due to paranoia around people and feeling as if others are talking about her." (Tr. 483). Plaintiff admitted to an extensive history of drug and alcohol abuse and depression, related in part to sexual trauma, and to experiencing difficulty sleeping,

---

[6] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

reduced appetite, worry, crying spells, limited energy, hallucinations, irritability, intrusive memories related to trauma, difficulties interacting with others, and panic attacks.  (Tr. 484-85). Plaintiff reported leaving prior jobs due to difficulty coping with stress and relating with others. (Tr. 485).  As to her activities of daily living, plaintiff reported caring for her dog, showering every other day, and writing poetry.  (*Id.*).  Plaintiff reported having no friends during school or at the time of examination—her only relationship being with one sister.  (Tr. 484-85).

On mental status examination, plaintiff's appearance, behavior, flow of conversation, and thought all appeared normal.  (Tr. 485-86).  Plaintiff appeared depressed, but she had sufficient energy, maintained good eye contact, and did not present as anxious.  (Tr. 486).  Plaintiff reported worrying that others were talking about her and related suspicion, but she did not exhibit indications of obsessions, compulsions, paranoid ideations, delusions, or hallucinations. (*Id.*).  Plaintiff's intellectual abilities (sensorium and cognitive functioning) appeared normal. (Tr. 486).  Dr. Twehues found that plaintiff had some insight into her mood and substance abuse but expressed that plaintiff was likely to relapse, demonstrated difficulty in interpersonal relationships, and had judgment only marginally sufficient for making decisions affecting her future and conducting efficient living arrangements.  (Tr. 486).

Dr. Twehues assessed plaintiff with an unspecified depressive disorder, PTSD, unspecified personality disorder, alcohol use disorder (severe, early full remission), amphetamine-type substance use disorder (severe, sustained full remission), and cocaine use disorder (severe, sustained full remission).  (Tr. 487).  Dr. Twehues opined that plaintiff would have no significant limitations in understanding, remembering, and carrying out instructions.

8

(*Id.*). Dr. Twehues opined that based on plaintiff's "experience of depressed mood, high anxiety, and agitation," she expected that plaintiff would have mild to moderate difficulties with maintaining focus for prolonged periods of time and "higher than unusual rates of absenteeism from work. . . ." (Tr. 488). Despite finding that plaintiff interacted appropriately and pleasantly with her, Dr. Twehues opined that plaintiff would likely have moderate to marked limitations with responding appropriate to supervision and coworkers in a work setting based on demonstrated "difficulty regulating her temper[,]" "suspiciousness and mistrust of others," and likelihood of interpreting others' benign behavior as hostile/critical and responding with agitation. (Tr. 488). Dr. Twehues opined that plaintiff would likely have marked limitations in responding appropriately to work pressures in a work setting as demonstrated by a remote psychiatric hospitalization for self-mutilation behavior; relatively recent suicidal thoughts; a high risk for alcohol relapse; reduced stress tolerance and impulse control; and a proclivity toward anxiety, depression, and panic attacks in response to stress. (*Id.*). Although Dr. Twehues noted that plaintiff "exaggerate[d] her mental health symptoms[,]" she nevertheless concluded that plaintiff "d[id] seem to experience fairly significant deficits with regard to functioning." (Tr. 487).

The ALJ assessed Dr. Twehues' psychological opinion in conjunction with that of Dr. Ray, the physical consultative examiner. The ALJ found the opinions of Drs. Twehues and Ray "only somewhat persuasive[.]" (Tr. 35). The ALJ stated:

> These doctors had the opportunity to examine the claimant in person, but only on
> one occasion and not in a treating context. Their assessments are somewhat
> vague and appear based, in some part, on subjective complaints, rather than
> objective findings. Overall, the limitations are not consistent with the claimant's

routine and conservative treatment detailed above or with the objective findings from her treating sources.

(*Id.*).

Plaintiff argues that the ALJ's assessment of Dr. Twehues' opinion is not based on substantial evidence because it ignored the fact that consultative examinations like Dr. Twehues' are used to fill gaps in the treatment record, and plaintiff was incarcerated just prior to her SSI application. Plaintiff also argues that Dr. Twehues' opinion was consistent with the objective findings—referring to January 2018 and January 2020 Community Behavior Health records documenting crying spells, lack of motivation, uncontrollable anger, anxiety, irritability, and frequent mood swings that have led to difficulties maintaining work and interpersonal confrontations. (*See* Doc. 9 at PAGEID 650-51, referring to Tr. 521, 525-26). Plaintiff also argues that the ALJ offered no support for her assertion that Dr. Twehues' opinion was vague. Plaintiff next argues that the ALJ did not explain why Dr. Twehues' opinion was not supportable, noting that both her evaluation itself as well as the discharge summary from the Ohio Reformatory for Women on which she expressly relied supported the opinion. Finally, plaintiff argues that the ALJ improperly discredited Dr. Twehues' opinion because it was based on subjective complaints—noting that psychiatric evaluation is inherently dependent on subjective reports.

The Commissioner argues in response that the ALJ was expressly permitted under the applicable regulations to consider Dr. Twehues' relationship with plaintiff. The Commissioner also argues that Dr. Twehues' opinion was vague because it appeared based more on subjective symptom reports than on objective clinical findings—particularly given that Dr. Twehues

10

elsewhere commented that plaintiff exaggerated her mental health symptoms. Finally, the Commissioner points to evidence in the record demonstrating that Dr. Tweheus' opinion was inconsistent with plaintiff's limited, conservative mental health treatment and other clinical findings.

Plaintiff emphasizes in reply that the ALJ failed to explicitly and adequately address the supportability and consistency factors. Plaintiff also highlights the fact that a failure to pursue mental health treatment can be understood as a symptom of an underlying impairment as opposed to an indication that the impairment is not severe; i.e., the lack of treatment in this case is not inconsistent with Dr. Twehues' assessment of plaintiff's mental functioning limitations.

The Court determines that the ALJ's decision finding Dr. Twehues' opinion "somewhat persuasive" is not supported by substantial evidence for the dispositive reason that she did not adequately address its supportability or consistency—mandatory analyses under the new regulations. (Tr. 35). *See* 20 C.F.R. § 416.920c(b)(2) ("[W]e will *explain* how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision.") (emphasis added). To the extent that the ALJ discusses the supportability factor at all, it is in her combined and perfunctory analysis of Dr. Twehues and the physical consultative examiner's opinions as "vague and appear[ing] based, in some part, on subjective complaints. . . ." (Tr. 35). But this fails to explain exactly how Dr. Twehues' opinion was vague and unsubstantiated by "objective medical evidence and supporting explanations. . . ." 20 C.F.R. § 416.920c(c)(1). To the contrary, as set forth by plaintiff, Dr. Twehues included

11

support for her opinion, including diagnoses from the Ohio Reformatory for Women patient discharge summary (Tr. 483) and her own mental status examination (Tr. 485-86).

Regarding the consistency factor, the ALJ offers a generalized statement that the opinions of *both* Dr. Twehues and Dr. Ray, the physical consultative examiner, were inconsistent with "the objective findings from [plaintiff's] treating sources." (Tr. 35). The ALJ fails, however, to identify the objective finding or the specific treating source records (mental or physical) that provide the point of comparison. The Commissioner's references to record evidence inconsistent with Dr. Twehues' opinion and demonstrating the unreliability of plaintiff's symptom reports are unavailing, as these were not reasons given by the ALJ for her decision. *See Miller v. Berryhill*, No. 3:16-cv-94, 2017 WL 1021313, at *8 (S.D. Ohio Mar. 16, 2017) (explaining that the Court generally should not accept post-hoc rationalizations for agency action unless any associated error is harmless).

The only other explanation for the ALJ's finding that Dr. Twehues' opinion was inconsistent with the record was her general statement that plaintiff had only "routine and conservative treatment" for her mental impairments. (Tr. 35). The ALJ does not elaborate on that treatment or why it was inconsistent with the limitations opined by Dr. Twehues. Elsewhere in her decision, the ALJ primarily describes plaintiff's *lack* of treatment. (*See, e.g.*, Tr. 29 (plaintiff did "*not* participate[] in routine mental health treatment") (emphasis added); Tr. 31 (plaintiff attended "court-ordered" mental health treatment); Tr. 32 (plaintiff denied participating in mental health treatment as of the ALJ hearing); Tr. 33 (several references to plaintiff's lack of regular participation in mental health treatment)). The Court is simply unable to determine the

12

"routine and conservative treatment" to which the ALJ referred and how it is inconsistent with the limitations opined by Dr. Twehues. *See Mukes v. Comm'r of Soc. Sec.*, 946 F. Supp. 2d 737, 747 (S.D. Ohio 2013) (there must be a "'logical bridge' between the evidence in the record and the ALJ's conclusion.") (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)).

For the foregoing reasons, the ALJ's decision to discount Dr. Twehues' opinion is not supported by substantial evidence. As such, remand is appropriate to reevaluate this opinion.

### 2. *Sheressa Albrinck, MA, LPCC*

Ms. Albrinck completed a mental capacity assessment on August 30, 2019. (Tr. 288-290). Ms. Albrinck opined that plaintiff would experience moderate limitation in her ability to sequence multi-step activities; work at an appropriate and consistent pace or complete tasks in a timely manner; make plans independently of others; understand and respond to social cues; and respond to requests, suggestions, criticism, correction, and challenges. (Tr. 288-90). Ms. Albrinck opined that plaintiff would experience marked limitation in her ability to use reason and judgment to make work-related decisions; ignore or avoid distractions while working; sustain an ordinary routine and regular attendance at work; adapt to changes; manage psychologically based symptoms; cooperate with others or ask for help when needed; handle conflicts with others; and keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (*Id.*).

In the area of understanding, remembering, or applying information, Ms. Albrinck noted that plaintiff "often understands instructions as she hears them, but struggles to keep multiple steps organized in her mind. She tends to get frustrated and lashes out." (Tr. 288). In the area

13

of concentration, persistence, or maintaining pace, Ms. Albrinck noted that plaintiff attempted

three different jobs in a single month period and walked out of each due to her "inability to

tolerate certain distractions, concerns of persecution/delusions," and "being unable to keep

pace." (Tr. 289). In the area of adapting or managing oneself, Ms. Albrinck noted plaintiff's

feeling that her mental health symptoms were "unmanageable, unpredictable, and out of

control." (*Id.*). In the area of interacting with others, Ms. Albrinck found that plaintiff did "not

have adequate skills to form and maintain healthy, prosocial functioning" and "regularly

bec[ame] overwhelmed by group social interaction and resorts to bouts of irritability." (Tr. 290).

Ms. Albrinck found that plaintiff's long history of substance abuse exacerbated her mental health

symptoms. (*Id.*).

The ALJ found Ms. Albrinck's opinion not persuasive because it was a "checkmark"

form based on a "one-time examination. . . ." (Tr. 35). The ALJ found that this opinion:

> appear[ed] excessive in light of the medical evidence of record as a whole,
> including [plaintiff]'s presentation during various mental status examinations,
> finding her with euthymic mood, good eye contact, and pleasant/cooperative
> presentation [Tr. 482-89 (Dr. Twehues' report), Tr. 541-42 (January 2020 mental
> status examination from Community Behavioral Health)], as well as [plaintiff]'s
> lack of significant mental health treatment, and her own reports of functioning,
> including currently maintaining part-time employment.

(Tr. 35).

Plaintiff argues that, as with Dr. Twehues' opinion, the fact that Ms. Albrinck's opinion

was based on a one-time evaluation is not alone substantial evidence to discount the opinion, and

the dispositive issue is that the ALJ failed to address this opinion's supportability at all.

Regarding the opinion's consistency with the rest of the record, plaintiff notes that the ALJ's first

14

supporting citation is to Dr. Tweheus' report. Although that report shows that plaintiff cooperated with Dr. Twehues during the examination itself, plaintiff argues that this should not trump the report's ample support for the disability limitations endorsed by Ms. Albrinck, including its summary of her history of trauma, substance abuse, incarceration, and trouble interacting with others. The ALJ's second supporting citation is to a normal mental status examination at Community Behavior Health. Plaintiff argues her presentation in these two supervised, structured settings do not undercut Ms. Albrinck's assessment of her overall mental health limitations.

The Commissioner argues in response that the ALJ was expressly permitted under the applicable regulations to consider Ms. Albrinck's relationship with plaintiff. The Commissioner argues that the ALJ discussed the supportability of the opinion by way of a reference, earlier in her decision, to the fact that findings of "moderate depression and anxiety and moderate persecutory delusion" were "based on subjective report." (Tr. 31). The Commissioner further argues that the ALJ explained elsewhere in her decision how the extent of Ms. Albrinck's proposed limitations was inconsistent with routine, conservative treatment and normal mental status examinations. (*See* Doc. 11 at PAGEID 674, citing Tr. 28-29, 31-33, 35). The Commissioner also argues that in records subsequent to Ms. Albrinck's examination of plaintiff, plaintiff denied behavioral problems, nervousness, and anxiety. Finally, the Commissioner argues that the ALJ cited plaintiff's part-time employment as inconsistent with Ms. Albrinck's relatively extreme functional limitation recommendations.

The Court finds that the ALJ's decision with respect to Ms. Albrinck's opinion is not supported by substantial evidence because the ALJ did address this opinion's supportability. *See* 20 C.F.R. § 416.920c(b)(2). *See Carolyn W. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-423, 2022 WL 4244214, at *5 (S.D. Ohio Sept. 15, 2022) (the new medical opinion guidelines set forth a "mandatory articulation rule" that "serves the same purpose as the good reasons requirement of the treating physician rule"). The Commissioner's argument otherwise relies solely on the ALJ's statement, which was *not* made in the medical-opinion-evaluation portion of her decision, that Ms. Albrinck's clinical findings were "based on subjective report. . . ." (Tr. 31) (emphasis added). This statement, without more, does not reflect a meaningful articulation of the supportability of Ms. Albrinck's opinion. "The suggestion that a trained mental health clinician's opinions can be rejected merely because they are based upon clinical observations (including the analysis of subjectively reported symptoms) has been rejected by the Sixth Circuit." *Jearame B. v. Comm'r of Soc. Sec.*, No. 1:21-cv-228, 2022 WL 3154131, at *5 (S.D. Ohio Aug. 8, 2022) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)). *See also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 526 (6th Cir. 2014) ("Even if [the doctor] had based his medical opinion solely on Plaintiff's own reports of hallucinations, nightmares, flashbacks, isolation, and psychological numbness, that likely would not have provided a sufficient basis for the ALJ's rejection of his medical opinion.").

To the extent that the ALJ discussed Ms. Albrinck's opinion's consistency with the rest of the record, her conclusion is not supported by substantial evidence. The ALJ relied on plaintiff's euthymic mood, good eye contact, and pleasant/cooperative presentation during Dr.

16

Twehues' evaluation and during a January 2020 Community Behavioral Health Assessment to discount Ms. Albrinck's opinion as inconsistent with the record.  These limited observations in a controlled environment, however, ignore the overarching theme of both documents—plaintiff's consistent reports of severe trauma; severe and long-term substance abuse; and associated difficulties with interpersonal relationships, judgment, and responses to work pressures in a work setting.  (*See* Tr. 484-86, 488, 531-40).  *Cf.* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(3)(c) ("[I]f you are able to use an area of mental functioning at home or in your community, we will not necessarily assume that you would also be able to use that area to function in a work setting where the demands and stressors differ from those at home."); *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (A claimant's "congenial" behavior in a "short-term encounter or examination" had "little or no apparent bearing on whether she c[ould] maintain pace or stay on task for an entire workday.").

The ALJ also references plaintiff's lack of significant mental health treatment as inconsistent with more disabling limitations, but "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state.  For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009).  Though the ALJ elsewhere expressly highlights plaintiff's incarceration and serious drug abuse issues (Tr. 31), she fails to address these obvious reasons for plaintiff's treatment gap/lack of treatment in this part of the opinion; as such, it is not substantial evidence of inconsistency between Ms. Albrinck's opinion and the rest of the record.  *See id.* at 284 (Where there was *no* evidence in the

record to explain a gap in treatment, a "'reasonable mind' might . . . find that the lack of

treatment . . . indicated an alleviation of [the claimant's] symptoms.").

The only other piece of evidence the ALJ offered to support her conclusion that Ms.

Albrinck's opinion was inconsistent with other record evidence is the fact that plaintiff could

maintain part-time employment. Part-time work can be relevant to the disability determination.

*Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (The ALJ did not err by

considering a claimant's ability to maintain part-time employment among other evidence that

supported discounting several medical opinions). The ALJ failed to explain, however, how

plaintiff's part-time work[7] was inconsistent with her subjective symptom reports. *See, e.g.*,

*Williamson v. Comm'r of Soc. Sec.*, No. 1:16-cv-583, 2017 WL 713904, at *4 (S.D. Ohio Feb.

23, 2017) ("[T]he ALJ reasonably determined that plaintiff's part-time work activity was

inconsistent with his allegations that he spent the bulk of his day 'lying down and watching

television' and that he was restricted to sitting for approximately 1.5 hours and standing for 20-

30 minutes before having to change positions and to walking for 20 minutes total in an 8-hour

workday."), *report and recommendation adopted*, 2017 WL 1049561 (S.D. Ohio Mar. 17, 2017).

*See also Foster v. Comm'r of Soc. Sec.*, No. 3:18-cv-300, 2019 WL 11497232, at *5 (S.D. Ohio

Sept. 23, 2019) ("[E]vidence showing that Plaintiff worked on less than a full-time basis is not

evidence that she is capable of working 'on a sustained basis, which is how functional limitation

of mental impairments are to be assessed.'") (quoting *Hale v. Comm'r of Soc. Sec.*, 307 F.3d

785, 794 (S.D. Ohio 2017) (in turn quoting *Gayheart*, 710 F.3d at 377)). To the contrary, a short

---

[7] Plaintiff had been working part-time for Kentucky Fried Chicken for approximately one month as of the ALJ
hearing. (*See* Tr. 52).

18

stint with an employer appears consistent with plaintiff's unsuccessful work history. (*See, e.g.*, Tr. 289 (Ms. Albrinck notes that plaintiff attempted three jobs in a one-month period)). Given the foregoing, a reference to plaintiff's part-time work, without more, is not substantial evidence to support the ALJ's conclusion that Ms. Albrinck's opinion is inconsistent with other record evidence.

For the foregoing reasons, the ALJ's decision to discount Ms. Albrinck's opinion is not supported by substantial evidence. As such, remand is appropriate to reevaluate this opinion.

### 3. *State agency psychological consultants*

At the initial level, Leslie Rudy, Ph.D., opined that plaintiff experienced moderate limitations in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the generally public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. (Tr. 90-91). Dr. Rudy opined that plaintiff was capable of occasional and superficial interpersonal contact. (Tr. 91). On reconsideration, Cindy Matyi, Ph.D., agreed with these assessments, adding that plaintiff was "susceptible to misinterpreting interpersonal nuance, yet can relate adequately on a superficial basis in an

environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny." (Tr. 103).

The ALJ found these opinions "somewhat persuasive." (Tr. 34). The ALJ found their opinions "generally consistent with the record"—citing, in particular, Dr. Twehues' evaluation and plaintiff's symptom reports. (*Id.*). The ALJ also found, however, that their limitations to "superficial" and "minimal" interpersonal contact were "somewhat undefined" and that "the full severity of limitations" was inconsistent with plaintiff's minimal, routine treatment. (Tr. 34-35, referring to Tr. 91 and Tr. 103).

Plaintiff argues that the ALJ improperly rejected the state agency psychological consultants' limitation to superficial interpersonal contact. Plaintiff argues that many courts have interpreted this phrase to connote a qualitative limitation on interpersonal contact. Plaintiff further argues that the ALJ should not have rejected this part of the state agency psychological consultants' opinions without articulating their supportability and consistency.

The Commissioner argues in response that although courts have recognized that "superficial" connotes the quality of interaction, it was still appropriate for the ALJ to omit that phrase from her RFC determination because it is not defined by the agency. In any event, the Commissioner argues that the ALJ converted this qualitative limitation into vocationally relevant terms—determining that plaintiff could not "perform joint tasks" or have "over-the-shoulder supervision." (Tr. 30). The Commissioner also argues that the ALJ discussed the opinions' supportability and consistency.

20

The ALJ's decision accounted for the state agency psychological consultants' limitation to superficial interaction with coworkers.  The ALJ is "not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  Further, "it may fall to the ALJ to 'convert[ ] and incorporate[ ]' the limitations set forth in a medical opinion 'into vocationally relevant terms' – i.e., terms that are relevant and meaningful in the DOT / SCO and/or the VE's own vocational experience – before including those limitations in a hypothetical posed to a VE."  *Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-cv-2370, 2022 WL 721455, at *16 (N.D. Ohio Jan. 13, 2022) (quoting *Modro v. Comm'r of Soc. Sec.*, No. 2:18-cv-900, 2019 WL 1986522, at *7 (S.D. Ohio May 6, 2019)) (alterations in original), *report and recommendation adopted*, 2022 WL 716105 (N.D. Ohio Mar. 10, 2022).  *See also Richard S. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2176, 2023 WL 2805347, at *14 (S.D. Ohio Apr. 6, 2023) (ALJ did not err by crafting a vocationally relevant definition of "superficial interpersonal contact" where such definition was "supported by substantial evidence" and "not contradicted by other record evidence").

The vocational terms adopted by the ALJ in her RFC determination reflect the state agency psychological consultants' limitation to superficial interaction with coworkers, and this element of her RFC determination is therefore supported by substantial evidence.  *See Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315, 2023 WL 1857822, at *9 (S.D. Ohio Feb. 9, 2023) (ALJ was not required to adopt a limitation to "superficial" interactions and, in any event, explained that the RFC included both quantitative and qualitative limitations on interactions that were supported by the record), *report and recommendation adopted*, 2023 WL 2692415 (S.D.

Ohio Mar. 29, 2023); *Stamper v. Comm'r of Soc. Sec.*, No. 1:20-cv-467, 2021 WL 5577405, at *14 (S.D. Ohio Nov. 30, 2021) ("Given [the ALJ's thorough review of medical records reflecting generally normal mental health findings] and the fact that the ALJ included limitations on the nature/quality (as opposed to only the frequency) of interactions, the Court finds that the ALJ's mental RFC determination took the state agency psychologists' opinions regarding "superficial" interactions into account and was based on substantial evidence."), *report and recommendation adopted sub nom. Stamper v. Kijakazi*, 2022 WL 1183234 (S.D. Ohio Apr. 21, 2022); and *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670, 2020 WL 4333296, at *12 (S.D. Ohio July 28, 2020) ("The Court agrees that the limitation to no tandem tasks is a qualitative limitation on social interaction.  As such, this limitation adequately addressed the opinion of [the state agency consultants] that Plaintiff be limited to superficial interaction with others."), *report and recommendation adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020).  Because the Court finds that the ALJ incorporated the qualitative interpersonal contact limitation associated with the term "superficial" into her RFC determination, the Court need not consider plaintiff's remaining argument.

**III.  Conclusion**

Based on the foregoing, plaintiff's Statement of Errors (Doc. 9) is **SUSTAINED**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.

Date:  August 15, 2023

Karen L. Litkovitz
United States Magistrate Judge

22